**FOR PUBLICATION**                                              **CLOSED**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                          :
DAVID C. ONYIUKE,                         :
                                          :
             Plaintiff,                   :            Civil Action No. 05-5404 (JAP)
                                          :
      v.                                  :            **OPINION**
                                          :
NEW JERSEY STATE SUPREME COURT:
and NEW JERSEY BOARD OF BAR               :
EXAMINERS,                                :
                                          :
             Defendants.                  :
_____:

APPEARANCES

David C. Onyiuke
P.O. Box 2407
East Orange, NJ 07019
      *Pro Se*

David B. Bender
Office of the New Jersey Attorney General
Division of Law & Public Safety
25 Market Street
P.O. Box 112
Trenton, NJ 08625-0112
      *Attorney for Defendants*

1

PISANO, District Judge.

## I. INTRODUCTION

The Court faces a constitutional challenge to New Jersey Supreme Court Rule 1:24-2(b) ("Rule 1:24-2(b)"), which requires, *inter alia*, graduation from an accredited law school as a prerequisite to taking the New Jersey Bar Examination. The gravamen of Plaintiff's amended complaint is that rejections of his application to sit for the New Jersey Bar examination violated his rights under federal law and New Jersey law.

Plaintiff initiated this action under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(3)[1] against the New Jersey Supreme Court, which enacted Rule 1:24-2(b), and the New Jersey Board of Bar Examiners, which is charged with the inspection and determination of qualification of candidates for the New Jersey Bar examination. Plaintiff alleges that Rule 1:24-2(b) violated his rights to due process and equal protection ensured by the Fourteenth Amendment of the United States Constitution as well as his liberty and right to engage in lawful economic subsistence, for which he relies on the Ninth Amendment of the United States Constitution. Plaintiff further alleges that Rule 1:24-2(b) violated his fundamental rights to acquire property, due process of law, equal protection, and fundamental fairness ensured by Art. 1, Para. 1 of the New Jersey Constitution. Finally, Plaintiff alleges that the New Jersey Supreme Court abused its mandate

---

[1] Sections 1331 and 1343(3) are jurisdictional and do not provide a cause of action. Section 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Section 1343(3) provides district courts with "original jurisdiction of any civil action authorized by law to be commenced by any person: . . . (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States . . . ." 28 U.S.C. § 1343(3).

under Art. 6, s. 2, Para. 3 of the New Jersey Constitution to make rule for admission to the bar by enacting New Jersey Supreme Court Rule 1:24-2(b), failing to make rules for "all likely and credible foreseeable" applicants, failing to give public notice as to requisite courses to sit for the New Jersey bar, and by failing to perform ministerial duties.  Plaintiff seeks declaratory and injunctive relief, reasonable monetary damages, "all un-earned income as New Jersey Attorney", attorney's fees, and costs.

Currently before the Court are:  (1) Defendants' motion to dismiss the amended complaint and (2) Plaintiff's motion for leave to amend the amended complaint.  This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(3), 1367.  The Court decides this motion without oral argument as it is permitted to do under Fed. R. Civ. P. 78.  Plaintiff appears *pro se* and the Court therefore construes liberally Plaintiff's amended complaint and his various motion papers.  *See Johnson v. State of New Jersey*, 869 F. Supp. 289, 293 (D.N.J. 1994).  However, for the reasons discussed below, the Defendants' motion to dismiss the Complaint is granted, and Plaintiff's motion to amend the amended complaint is denied.


## II.  BACKGROUND[2]

Plaintiff represents that he is a United States citizen and has been a resident of New Jersey since 1995.  Plaintiff attended the University of Calabar, Nigeria, where he received a Bachelor of Science degree in Sociology.  Plaintiff also attended the University of Ibadan, Nigeria, where he obtained a Bachelor of Law degree.  Plaintiff states that the University of

---

[2] The Court assumes the truthfulness of Plaintiff's factual allegations as recounted herein solely for the purposes of this disposition.

Ibadan is a premier institution, founded in 1948 as an external campus of the University of

London, whose faculty is accredited by the statutory body regulating legal education in Nigeria.

Thereafter, Plaintiff attended the Nigerian National Law School, where he received certification

as a Barrister at Law.  Plaintiff passed the New York Bar examination in 2001 and was admitted

to practice law in New York in 2002.

Plaintiff alleges that he applied for both the February 2005 and July 2005 New Jersey Bar

examinations.  Further, in connection with his application for the February 2005 Bar

examination, he submitted to the New Jersey Board of Bar Examiners a complete transcript of

law courses he completed.  Plaintiff states that he submitted this transcript "in lieu of requisite

competencies needed for qualification to sit for New Jersey bar exam."  (Am. Compl. ¶ 10).  The

New Jersey Board of Bar Examiners rejected Plaintiff's applications for both the February 2005

and July 2005 New Jersey Bar examinations because Plaintiff received his law degree from a

foreign institution that is not approved by the American Bar Association.  The basis for the New

Jersey Board of Bar Examiners' rejections of Plaintiff's application was New Jersey Supreme

Court Rule 1:24-2(b) ("Rule 1:24-2(b)").  Rule 1:24-2(b) provides:

> No person shall be admitted to the bar examination without first presenting to the Board, in
> the manner prescribed by its rules:  . . . (b) Certification by a duly authorized officer of the
> applicant's law school that it is approved by the American Bar Association and that it has
> awarded the applicant a Juris Doctor degree or its equivalent. . . .

Rule 1:24-2(b).[3]

Plaintiff initiated this action on November 15, 2005, and amended the complaint on

---

[3] New Jersey Supreme Court Rule 1:24-2(b) is available at
http://www.judiciary.state.nj.us/rules/r1-24.htm.

December 15, 2005.[4]  On March 1, 2006, Defendants moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(1), (2), and (6).  On April 6, 2006, before briefing on Defendants' motion was completed, Plaintiff moved to amend the amended complaint.

## III.  DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Because both the New Jersey Supreme Court and the New Jersey Board of Bar Examiners are entitled to Eleventh Amendment immunity and none of the exceptions to sovereign immunity is applicable, the Court lacks subject matter jurisdiction over this action and must dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(1).  In the alternative, the amended complaint also must be dismissed because (1) the Court must dismiss Plaintiff's 42 U.S.C. § 1983 claims against both Defendants pursuant to Fed. R. Civ. P. 12(b)(6) since neither Defendant is a "person" under 42 U.S.C. § 1983, and (2) given such dismissal of all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction under § 28 U.S.C. § 1367(c) over Plaintiff's State law claims.

### A.  **Dismissal Under Rule 12(b)(1)**

The Eleventh Amendment provides:  "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."  U.S. Const. amend. XI.  While the text of the Eleventh Amendment expressly bars suits in federal court against States by citizens of other States or foreign states, the Eleventh Amendment has

---

[4] According to Plaintiff, the only amendments made were to correct the citations to Rule 1:24-2(b).

been broadly interpreted to prohibit suits by a State's own citizens as well.  *See A.W. v. Jersey City Public Schools*, 341 F.3d 234, 238 (3d Cir. 2003); *Bennett v. City of Atlantic City*, 288 F. Supp. 2d 675, 679 (D.N.J. 2003).  This sweeping immunity "precludes both legal and equitable relief, as well as claims under Section 1983." *Davis v. Township of Lakewood*, No. 03-CIV-1025(MLC), 2005 WL 2313783, at *2 (D.N.J. Sept. 21, 2005); *Bennett*, 288 F. Supp. 2d at 679 (stating that the Eleventh Amendment "applies regardless of whether a private plaintiff's suit is for money damages or some other type of relief") (internal quotations and citations omitted); *Johnson v. State of New Jersey*, 869 F. Supp. 289, 297 n.8 (D.N.J. 1994) (noting that the Eleventh Amendment bars claims against state agencies for injunctive relief as well as damages).

State sovereign immunity protects not only States, but also "entities and persons who can show that, even though the State is not the named defendant, the state is the real, substantial party in interest." *Bennett*, 288 F. Supp. 2d at 679 (quotations and citation omitted).  In general, "state agencies and state officials acting in their official capacities are routinely afforded Eleventh Amendment immunity" where "'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, . . . or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act,'" the State is the real, substantial party in interest. *Bennett*, 288 F. Supp. 2d at 679 (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)); *see also Davis*, No. 03-CIV-1025(MLC), 2005 WL 2313783, at *2.  In particular, factors a court should examine in determining whether state agencies, officials, or political subdivisions are arms of the state entitled to sovereign immunity are:  "(1) whether payment of a judgment would come from the state treasury; (2) the status of the entity under state law; and (3) the entity's degree of autonomy." *Bennett*, 288 F. Supp. 2d at 681.

The New Jersey Supreme Court is an arm of the State of New Jersey and is entitled to cloak itself in the State's sovereign immunity.  Article III of the Constitution of the State of New Jersey, entitled "Distribution of the Powers of Government", provides:  "The powers of the government shall be divided among three distinct branches, the legislative, executive, and judicial. . . ."  N.J. Const., Art. III, ¶ 1.  Article VI of the New Jersey Constitution addresses the judicial power, and provides in relevant part:  "The judicial power shall be vested in a Supreme Court, a Superior Court, and other courts of limited jurisdiction. . . ."  N.J. Const., Art. VI, § I, ¶ 1.  Accordingly, "[t]he judicial branch is an integral part of the State of New Jersey."  *Johnson*, 869 F. Supp. at 296 (collecting cases that consider the status of state courts under the Eleventh Amendment).  Further, given the status of the New Jersey Supreme Court under the State Constitution as the incarnation and apex of the judicial power, any monetary judgment against it would be paid out of the State treasury.  The New Jersey Supreme Court is, therefore, entitled to Eleventh Amendment immunity.

Likewise, the New Jersey Board of Bar Examiners is protected by the State's sovereign immunity.  First, the New Jersey Board of Bar Examiners is an arm of the New Jersey Supreme Court.  The Constitution of the State of New Jersey vests the New Jersey Supreme Court with jurisdiction over admission of attorneys to the bar:  ". . . The Supreme Court shall have jurisdiction over the admission to the practice of law and the discipline of persons admitted."  N.J. Const., Art. VI, § II, ¶ 3.  In furtherance of this jurisdiction, the New Jersey Supreme Court adopted New Jersey Supreme Court Rule 1:23-1, which provides in relevant part:  "[t]he Supreme Court shall appoint a Board of Bar Examiners consisting of such number of attorneys of this State as it shall from time to time determine."  N.J. Supreme Court Rule 1:23-1, *available at*

7

http://www.judiciary.state.nj.us/rules/r1-23.htm.  Given the status of the New Jersey Board of

Bar Examiners under State law as part of the judicial branch, any monetary judgment against it

would be paid out of the State treasury.  *Cf. Bennett*, 288 F. Supp. 2d at 681 (determining that

New Jersey's Department of Personnel and Merit System Board were entitled to the protection of

sovereign immunity).  In addition, there is no indication that the New Jersey Board of Bar

Examiners has any autonomy from the judicial branch.  *Cf. Bennett*, 288 F. Supp. 2d at 681;

*Johnson*, 869 F. Supp. at 298.  Accordingly, the New Jersey Board of Bar Examiners is entitled

to Eleventh Amendment immunity.

 While there are exceptions to Eleventh Amendment immunity, none is applicable to

either Defendant.  Only three "narrowly circumscribed" exceptions to Eleventh Amendment

immunity exist:  "(1) abrogation by Act of Congress; (2) waiver by state consent to suit; and (3)

suits against individual state officials for prospective relief to remedy an ongoing violation of

federal law."  *Davis*, No. 03-CIV-1025(MLC), 2005 WL 2313783, at *2.  None of these three

exceptions applies.  First, although Plaintiff's amended complaint relies on an Act of Congress,

namely § 1983, "nothing in § 1983 abrogates a state's Eleventh Amendment immunity."  *Simrin*

*v. Correctional Medical Servs.*, No. 05-CIV-2223 (RBK), 2006 WL 269677, at *2 (D.N.J. Feb.

24, 2006); *see also Kirkland v. Morgievich*, No. 04-1651 (WGB), 2005 WL 3465669, at *2

(D.N.J. Dec. 19, 2005) ("Section 1983 does not override a State's Eleventh Amendment

immunity.").  Second, there is no indication of waiver for either of the Defendants here, and

"[a]nything less than an express and unequivocal waiver of immunity is insufficient to subject a

State to suit."  *Bennett*, 288 F. Supp. 2d at 680.  Finally, as pleaded, the amended complaint

names only State agencies, not individuals, and thus the third exception is likewise inapplicable.

Because both Defendants are entitled to Eleventh Amendment immunity and none of the exceptions to sovereign immunity applies, the Court lacks subject matter jurisdiction over this action.  Thus, the amended complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).  *See Simrin*, No. 05-CIV-2223(RBK), 2006 WL 269677, at *2; *Davis*, No. 03-CIV-1025(MLC), 2005 WL 2313783, at *1.

**B.  Dismissal Under Rule 12(b)(6)**

The Court notes in the alternative that Plaintiff's federal claims premised on § 1983 also must be dismissed because neither defendant is a "person" under § 1983, and Plaintiff's State law claims must be dismissed because the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c).  Section 1983 provides a remedy for a violation of an established constitutional or statutory right by a "person."  42 U.S.C. § 1983.  "[N]either states, nor their departments and agencies, nor state officials sued in their official capacities for money damages are 'persons' within the meaning of § 1983."  *Simrin*, No. 05-CIV-2223 (RBK), 2006 WL 269677, at *2; *see also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70-71 (1989); *Ostroff v. New Jersey Supreme Court*, 415 F. Supp. 326, 328 n.2 (D.N.J. 1976) ("The New Jersey Supreme Court is not a 'person' under 42 U.S.C. § 1983").  Because neither the New Jersey Supreme Court nor the New Jersey Board of Bar Examiners is a "person" under § 1983, Plaintiff has failed to state a claim under § 1983 against either Defendant.

Further, because this disposition requires the dismissal of all Plaintiff's federal claims, and because no independent basis for remaining state law claims has been alleged, 28 U.S.C. § 1367(c) would permit the Court to decline to exercise supplemental jurisdiction over Plaintiff's remaining State law claims.  *See* 28 U.S.C. § 1367(c) (permitting a court to decline to exercise

supplemental jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction"). Accordingly, even if the Eleventh Amendment did not bar Plaintiff's claims, the amended complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Defendants are not "persons" under § 1983 and because the Court declines to exercise supplemental jurisdiction under § 1367(c).

### C.  **Defendants' Motion to Dismiss Must Be Granted**

For the foregoing reasons, Defendants' motion to dismiss the amended complaint is GRANTED.

## IV.  PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE AMENDED COMPLAINT

Plaintiff also moves for leave to amend his amended complaint. The amendment proposed by Plaintiff seeks to add two parties to the suit: the Honorable Deborah T. Poritz, Chief Justice of the New Jersey Supreme Court, and Stephen W. Townsend, Secretary of the New Jersey Board of Bar Examiners.

A party may amend his pleading once as a matter of course at any time before a responsive pleading is served. Fed. R. Civ. P. 15(a). This provision does not apply because Plaintiff already amended the complaint one time on December 15, 2005. Accordingly, Plaintiff may amend the amended complaint only if he has written consent of his adversaries or by leave of Court. Fed. R. Civ. P. 15(a). Plaintiff's adversaries have opposed the proposed amendment. Although leave to amend should be "freely given," a district court may deny a motion to amend if it is apparent from the record that "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives; (2) the amendment would be futile; or (3) the amendment would prejudice

the other party."  *See, e.g., Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005); *Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 292 (3rd Cir.1988).

The Court must deny Plaintiff's motion to amend his amended complaint because the amendment proposed by Plaintiff would be futile.  An amendment is considered futile "if the amendment will not cure [any] deficiency in the original complaint or if the amended complaint cannot withstand a motion to dismiss."  *Jablonski*, 863 F.2d at 292; *see also Boerger v. Commerce Ins. Servs*, No. Civ. 04-1337, 2005 WL 3235009, at *3 (D.N.J. Nov. 28, 2005) (indicating that if a proposed amendment is frivolous or states a claim that is legally insufficient on its face, a court may deny leave to amend).  As discussed below, the proposed second amended complaint would be unable to withstand a motion to dismiss.

As an initial matter, the Court notes that whether Plaintiff intended to sue Chief Justice Poritz and Townsend in their official or personal capacities, or both, is not clear.  The proposed second amended complaint submitted by Plaintiff does not expressly state the capacity in which he intends to sue either individual.  While Plaintiff's reply brief appears to indicate that he seeks to name these individuals in their official capacities, he appears to request remedies that would be unavailable in such an action.  Application of the controlling test likewise does not produce a conclusive result.[5]  In any event, however, the Court need not resolve the question of the capacity in which these individuals are sued because Plaintiff's proposed amended complaint fails to state a claim upon which relief may be granted.  Amendment thus would be futile, and Plaintiff's

---

[5] *See, e.g., Garden State Electrical Inspection Servs. v. Levin*, 144 Fed. Appx. 247, 251 (3d Cir. 2005) (indicating that, to determine whether a plaintiff names a State official in his or her official capacity, individual capacity, or both, a court must "look at the complaints and the 'course of proceedings' to determine the nature of the liability [the plaintiff] sought to impose").

motion must be denied.[6]

In determining whether a complaint fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), a court must reasonably read the complaint and decide whether the plaintiff has pled a cognizable cause of action entitling it to relief.  *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).  In making this determination, a court accepts as true all

_____

[6] The Court notes that, although the Court does not resolve the question of capacity here, to the extent Plaintiff intended to assert certain classes of claims such claims would be untenable, and thus any proposed amendment to include such claims futile.  First, to the extent that Plaintiff seeks damages against Chief Justice Poritz or Townsend in their official capacities, such claims would be barred by the Eleventh Amendment and thus would not withstand a motion to dismiss. *Davis*, No. 03-CIV-1025(MLC), 2005 WL 2313783, at *2 ("A suit for damages against state official in their official capacities is a suit against the office itself, and thus no different from a suit against the State itself."); *see also A.W.*, 341 F.3d at 238; *Green v. Essex County Superior Court Clerk*, No. 02-1872 (GEB), 2006 WL 932055 (D.N.J. April 6, 2006).  Second, to the extent that Plaintiff seeks prospective injunctive relief relating to official acts from either individual in their personal capacity, Plaintiff's claims likewise would not withstand a motion to dismiss.  *See Barrish v. Cappy*, Civ. No. 06-837, 2006 WL 999974, at *4 (E.D. Pa. April 17, 2006) ("Finally, to the extent [Plaintiff]'s complaint seeks an injunction against the Chief Justice in his personal capacity, it is fundamentally flawed.  We do not see how a court can order an officer in his personal capacity to take an official act.").  Accordingly, Plaintiff's motion must be denied to the extent it seeks to amend by adding either:  (1) damages claims against Chief Justice Poritz or Townsend in their official capacities, or (2) injunctive relief claims against Chief Justice Poritz or Townsend in their personal capacities.

However, the disposition of the foregoing two classes of claims still would require the Court to consider any claims made against either individual:  (1) for prospective injunctive relief in their official capacities, or (2) for damages in their personal capacities.  *See, e.g., Verizon Maryland Inc. v. Public Service Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (internal quotations and citation omitted) (alteration in *Verizon Maryland*) (stating that, to determine whether a suit avoids an Eleventh Amendment bar under this doctrine, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective"); *Hafer v. Melo*, 502 U.S. 21 (1991) (indicating that a state official sued in his or her individual capacity is a "person" for purposes of § 1983); *Hawkins v. Supreme Court of New Jersey*, No. 05-CIV-4361, 2006 WL 825481, at *2 n.3 (3d Cir. 2006) (citing *Ex Parte Young*, 209 U.S. 123 (1908)) (indicating that there is an exception to sovereign immunity for suits seeking prospective injunctive relief against state officials in their official capacities).

of the well-pleaded factual allegations within the complaint and any reasonable inferences drawn therefrom. *Hayes v. Gross*, 982 F.2d 104, 105-06 (3d Cir. 1992). The court may also consider exhibits attached to the complaint, matters of public record, and documents that form a basis of plaintiff's claim. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004). However, the court need not consider a plaintiff's bald assertions or legal conclusions. *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

### A.  Section 1983

Plaintiff brings his federal claims under 42 U.S.C. § 1983.[7] Section 1983 does not create any substantive rights; rather, it provides a cause of action for certain violations of established constitutional or statutory rights. *See, e.g., Green v. City of Paterson*, 971 F. Supp. 891, 900 (D.N.J. 1997). To state a claim under § 1983, Plaintiffs must establish (1) that they were deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States and (2) that the alleged deprivation was committed under color of state law. 42 U.S.C. § 1983 (2005); *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *see also D'Aurizio v. Palisades Park*, 963 F. Supp. 378, 383 (D.N.J. 1997). While Plaintiff alleges deprivations of several rights secured by the Constitution of the United States, none of Plaintiff's allegations

---

[7] Section 1983 states in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

under § 1983 could withstand a motion to dismiss.  Consequently, the amendment proposed by Plaintiff would be futile.

### 1. *Fourteenth Amendment Equal Protection*

Plaintiff's proposed second amended complaint alleges that Rule 1:24-2(b) violated his right to equal protection secured by the Fourteenth Amendment because the State of New Jersey discriminated against him by legislatively recognizing academic credentials of certain foreign-trained professionals, including doctors, nurses, pharmacists, and paramedics (hereinafter, "medical professionals"), while failing and refusing to accord foreign-trained attorneys the same recognition.  (Proposed 2nd Am. Compl. ¶ 18).  Further, Plaintiff's opposition brief alleges discrimination premised on alienage.  (Pltf's Opp. Br. at 33-34).

The Fourteenth Amendment states, *inter alia*:  "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  The Equal Protection Clause does not require the state to treat all persons alike, but rather requires that similarly situated persons be treated alike.  *See City of Clebrune, Texas v. Cleburne Living Center*, 473 U.S. 432 (1985).  To prevail on a § 1983 equal protection claim, "a plaintiff must show that the alleged offensive categorization invidiously discriminates against the disfavored group."  *Price v. Cohen*, 715 F.2d 87, 91 (3d Cir. 1983).  The level of deference shown to a state-created category "varies according to the group discriminated against and the right or the interest infringed."  *Id.*  Absent a classification that interferes with a fundamental personal right or draws upon suspect distinctions such as race, religion, or alienage, "economic and social legislation is subject to rational basis review, under which a law need only be rationally related to a legitimate

state interest."[8]  *Schumacher v. Nix*, 965 F.2d 1262, 1266 (3d Cir. 1992).  As discussed below, Rule 1:24-2(b) neither employs a suspect classification nor impinges a fundamental right, and thus the rational basis standard applies.  *Id.*, at 1269 (indicating that state laws that neither employ a suspect classification nor impinge a fundamental right "are entitled to a presumption of validity against attack under the Equal Protection Clause", which presumption "finds its expression in the rational basis test").

First, no fundamental right is impinged by the classification at issue.  It is well settled "that the right to practice law is not a fundamental right for purposes of equal protection analysis."  *Schumacher*, 965 F.2d at 1268 n.9; *accord Tolchin v. Supreme Court of the State of New Jersey*, 111 F.3d 1099, 1114 (3d Cir. 1997); *Ostroff v. New Jersey Supreme Court*, 415 F. Supp. 326, 328 (D.N.J. 1976) (upholding a New Jersey Supreme Court Rule that required graduation from an accredited college as a prerequisite to taking the New Jersey Bar examination, and stating:  "Quite clearly the practice of law is not a matter of grace, . . . but of right for one who is qualified by his learning and his moral character.'  This 'right', however, has never been among those held to be 'fundamental' under the Constitution, nor do any of the cases suggest that it should be.") (internal quotations and citations omitted); *Potter v. New Jersey Supreme Court*, 402 F. Supp. 1036, 1038 (D.N.J. 1975).

Second, no suspect classification is employed.  As an initial matter, lawyers are not a suspect class for equal protection purposes, and, by extension, neither are applicants to the Bar.  *See, e.g., Guralnik v. Supreme Court of New Jersey*, 747 F. Supp. 1109, 1114 (D.N.J. 1990).  In

---

[8] Judicially-approved rules such as New Jersey Supreme Court Rule 1:24-2(b) "fall within the ambit of the Equal Protection Clause."  *See Tolchin v. Supreme Court of the State of New Jersey*, 111 F.3d 1099, 1114 (3d Cir. 1997); *Schumacher*, 965 F.2d at 1266 n.7.

his Opposition Brief, Plaintiff further alleges that Rule 1:24-2(b) employs alienage classification, which is a recognized suspect classification.  *See, e.g., Angstadt v. Midd-West School Dist.*, 377 F.3d 338 (3d Cir. 2004).  However, alienage is not implicated by Rule 1:24-2(b).  Rule 1:24-2(b) concerns only the academic institution attended, not the citizenship or otherwise the immigration status of the applicant.  Under the terms of Rule 1:24-2(b), United States citizens and non-citizens who attended non-ABA-accredited law schools would be ineligible from taking the Bar, whereas non-citizens and citizens who attended ABA-accredited law schools would not.  Illustrating this point, Plaintiff is a United States citizen.

Because Rule 1:24-2(b) neither employs a suspect classification nor impinges a fundamental right, the rational basis standard applies.  Having concluded that rational basis review governs the Equal Protection analysis of Rule 1:24-2(b), the next question is whether the Rule passes muster under this standard.  As indicated above, under rational basis review,  "a law need only be rationally related to a legitimate state interest."  *Schumacher*, 965 F.2d at 1266. Under this standard, while "a statutory distinction does not violate the Equal Protection Clause if any state of facts reasonably may be conceived to justify it", a "classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Id.*, at 1269 (internal quotations and citations omitted).

To the extent that Plaintiff's allegation of alienage discrimination can be interpreted to argue that Rule 1:24-2(b) effects discrimination between domestic-trained and foreign-trained attorneys, Plaintiff's claim would not withstand a motion to dismiss.  The legitimacy of the State interest in requiring high standards of qualification for those admitted to the practice of law is

well established.  In general, "'States have a compelling interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standard for licensing practitioners.'" *Ostroff*, 415 F. Supp. 328-29 (quoting *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792 (1975)); *Potter*, 402 F. Supp. at 1037-38 ("It is beyond serious question that a state may regulate an occupation which affects the public interest by setting qualification reasonably related to competency.") (collecting cases in various jurisdictions that upheld the requirement that candidates for admission to a state bar hold a law degree from an institution approved by the American Bar Association); *cf. Tolchin,* 111 F.3d at 1110, 1114-15 ("[S]tates clearly have a substantial interest in . . . overseeing attorneys practicing within their borders.").  More specifically, it is clear that "states have a substantial interest in requiring high standards of qualification for those admitted to the practice of law." *Ostroff*, 415 F. Supp. at 329.

Further, the Court concludes that Rule 1:24-2(b) has a rational connection to the State's legitimate interest in the high standards of qualification for those admitted to the practice of law. *See Ostroff*, 415 F. Supp. 329; *see also Schware v. Board of Bar Examiners*, 353 U.S. 232, 239 (1957) ("A State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a *rational* connection with the applicant's fitness or capacity to practice law.") (emphasis added). As indicated by Defendants, a reason for requiring ABA certification is to maintain an objective method of determining the quality of the educational environment of prospective attorneys.  *Cf. Potter*, 402 F. Supp. at 1037-38 (upholding predecessor to Rule 1:24-2(b) against equal protection challenge).  The quality of an applicant's educational environment plainly is rationally

17

related to the applicant's fitness or capacity to practice law.  The Court thus concludes that Rule 1:24-2(b) is rationally related to the State's legitimate interests in ensuring high standards of qualification for those admitted to the practice of law.

Moreover, the Court rejects Plaintiff's argument that "the defendants are under a duty to show that no less restrictive alternative is available."  For purposes of rational basis review, "a rule need not be the least restrictive means of achieving a permissible end."  *Tolchin*, 111 F.3d at 1114.  Rather, "[s]o long as the New Jersey Supreme Court could rationally have decided that its action would further its goal, the Equal Protection Clause is satisfied."  *Id.*

As a final matter, the Court notes that Plaintiff's argument that, through Rule 1:24-2(b), the State violates the Equal Protection Clause by discriminating between foreign-trained medical professionals and foreign-trained attorneys is inapt.  Medical professionals and attorneys are not similarly situated, and equal protection therefore does not compel that they be treated alike.[9] Further, none of the New Jersey Supreme Court, the New Jersey Board of Bar Examiners, the Chief Judge, or the Secretary are the appropriate defendants to answer Plaintiff's challenge to the State's purported differential treatment of various classes of professionals.  There is no allegation that any of the named or proposed Defendants herein have any jurisdiction over or involvement in the treatment of academic credentials of medical professionals.

For the reasons discussed above, "[i]t is clear to this Court that the State has a rational basis for a requirement that applicants for admission to the State bar be graduates of a law school

---

[9] Assuming Plaintiff is correct in asserting that foreign academic credentials are accepted for medical professionals, but not for attorneys, various rational bases for distinguishing among these classes of professionals are readily apparent to the Court.  For example, while the human body and its possible afflictions remain essentially constant across borders, systems of governance and jurisprudence vary extensively.

approved by the American Bar Association." *Ostroff*, 415 F. Supp. 329. Plaintiff's equal

protection claim thus could not withstand a motion to dismiss.

### 2. *Fourteenth Amendment Due Process*

Plaintiff alleges that Rule 1:24-2(b) deprived him of his right to due process of law

secured by the Fourteenth Amendment because (1) he "was determined as unqualified to sit for

New Jersey Bar, without due evaluation of [his] credentials" in connection with his applications

for the February and July 2005 Bar examinations; (2) "[t]he decision by New Jersey Supreme

Court to disqualify me was arbitral [*sic.*], as it was based on improper irrefutable presumption of

incompetence"; (3) "[n]o particularity was accorded to [his] application . . . ; and (4) "[n]o

administrative response was accorded to [his] request for reasons for failure to evaluate [his]

credentials, by the NJ Board of Bar Examiners." (Proposed 2nd Am. Compl. ¶ 17). In his

opposition papers, Plaintiff clarifies this claim, alleging, *inter alia*, infringement of alleged

liberty interests "to 'seek' membership of a profession" and "to take exam, right to engage in law

practice (subsistence of Plaintiff's choice) and right to individualized assessment", and asserting

that Rule 1:24-2(b) establishes an "improper irrebuttable presumption of incompetence, which is

abridgement of his due process right." (Pltf.'s Opp. Br. at 6-16).

The Fourteenth Amendment states, *inter alia*: "No state shall . . . deprive any person of

life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. In

general, "[t]o satisfy the requirements of the Due Process Clause, laws and regulations must

provide specific standards which avoid arbitrary and discriminatory enforcement." *Tolchin v.*

*Supreme Court of the State of New Jersey,* 111 F.3d 1099, 1115 (3d Cir. 1997). Whether or not a

liberty interest, or, for that matter, a property interest, is at stake need not detain the Court

because it is clear that due process was satisfied.

The due process argument advanced by Plaintiff has previously been rejected by the District of New Jersey. *Potter v. New Jersey Supreme Court*, 402 F. Supp. 1036 (D.N.J. 1975), upheld the essentially identical predecessor of New Jersey Supreme Court Rule 1:24-2(b)[10], and *Ostroff v. New Jersey Supreme Court*, 415 F. Supp. 326 (D.N.J. 1976), upheld an analogous New Jersey Supreme Court Rule.[11]  Both *Ostroff* and *Potter* rejected due process arguments framed as is Plaintiff's, citing the following:

> "Were we to label these requirements as unconstitutional 'presumptions' we would strip the . . . Supreme Court and the Board of Law Examiners of all authority to establish requirements for admission to the bar and abolish all semblance of objective criteria.  This we will not do."

*Ostroff*, 415 F. Supp. at 329 (quoting *Rossiter v. Law Committee*, Civ. No. 4767 (D. Colo. Aug. 26, 1975 (three-judge court)) (alteration in *Ostroff*); *Potter*, 402 F. Supp. at 1039 (quoting *Rossiter*).  This case involves a challenge to the imposition of a general, objective prerequisite to admission.  There is no indication that Rule 1:24-2(b) has been applied in an arbitrary or discriminatory manner.  Consequently, this Court, as did both *Ostroff* and *Potter* in analogous

---

[10] The predecessor to New Jersey Supreme Court Rule 1:24-2(b) that was under review in *Potter* provided:

> No person shall be admitted to the bar examination unless he first presents to the Board (of Bar Examiners), in the manner prescribed by its rules:  (c) Certification by a duly authorized officer of his law school that it is approved by the American Bar Association and that it has awarded him a Juris Doctor degree or its equivalent. . . .

New Jersey Supreme Court Rule 1:24-2(c), quoted in *Potter*, 402 F. Supp. at 1037 (parenthetical in *Potter*).

[11] The Rule at issue in *Ostroff* had required graduation from an accredited college as a prerequisite to taking the New Jersey Bar Examination.

circumstances, concludes that due process has been satisfied.

Further, the Court notes that Rule 1:24-2(b) does not exclude Plaintiff from the practice of law in New Jersey. Rather, to satisfy the particular requirement at issue, Plaintiff need only attend and graduate from an ABA-approved law school. Moreover, in general, ABA-approved law schools have provisions permitting foreign-trained attorneys to obtain a law degree and crediting up to one-third of their credit-hours towards earning a Juris Doctor degree. *See* A.B.A. Sec. of Leg. Ed. & Admissions to the Bar, Standard 507 (2005).[12] It appears from the pleadings and papers submitted in connection with the instant motions that Plaintiff has failed to avail himself of any opportunity to apply to, attend, and graduate from an ABA-approved law school. As a result, he is unable to satisfy Rule 1:24-2(b), rendering him ineligible to sit for the New Jersey Bar Examination. Therefore, Plaintiff's inability to practice law in New Jersey is due to

---

[12] Standard 507 provides:

APPLICANTS FROM FOREIGN LAW SCHOOLS.
(a) A law school may admit a student with advanced standing and allow credit for studies at a law school outside the United States if:
    (1) the studies were "in residence" as provided in Standard 304, or qualify for credit under Standard 305;
    (2) the content of the studies was such that credit therefor would have been granted towards satisfaction of degree requirements at the admitting school; and
    (3) the admitting school is satisfied that the quality of the educational program at the foreign law school was at least equal to that required by an approved school.
(b) Advanced standing and credit hours granted for foreign study may not exceed one-third of the total required by an admitting school for its J.D. degree.

*Interpretation 507-1:*
*This Standard applies only to graduates of foreign law schools or students enrolled in a first degree granting law program in a foreign educational institution. (August 1989; February 1995; August 1996).*

A.B.A. Sec. of Leg. Ed. & Admissions to the Bar, Standard 507 (2005), *available at* http://www.abanet.org/legaled/standards/chapter5.html.

his own actions, and not to any constitutional due process violation.  *Cf. Tolchin*, 111 F.3d at 1115-16 (finding no due process violation where plaintiff declined to attend mandatory continuing legal education course).

For the foregoing reasons, Plaintiff's due process claim could not withstand a motion to dismiss.

### 3.   *The Ninth Amendment*

Plaintiff alleges that New Jersey Supreme Court Rule 1:24-2(b) deprived him of his "liberty to engage in any lawful economic subsistence, and the right, only to be excluded lawfully from such engagement as guaranteed under 9th Amendment of United State [*sic.*] Constitution." (Proposed 2nd Am. Compl. ¶ 19).

The Ninth Amendment provides:  "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."  U.S. Const. amend. IX.  It has been argued that the Ninth Amendment protects rights not expressly enunciated elsewhere in the Constitution.  *See Griswold v. Connecticut*, 381 U.S. 479, 488-91 (1965) (Goldberg, J., concurring).  However, the Ninth Amendment has not been recognized to independently secure any constitutional right for purposes of pursuing a civil rights claim.  *See Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986); *see also Payne v. Kempthorne*, No. 04-477-S(BLW), 2005 WL 1206676, *4 (D. Idaho May 20, 2005) ("The Ninth Amendment is not the basis for a private cause of action under the civil rights statute.").  Rather, a § 1983 claim must be based on the alleged deprivation of a specific constitutional guarantee.  *See id.*; *see also Rini v. Zwirn*, 886 F.Supp. 270, 289 (E.D.N.Y. May 5, 1995) ("Section 1983 claims must be based on a specific constitutional guarantee.").

Accordingly, Plaintiff's Ninth Amendment claim could not withstand a motion to dismiss.

**B.  Constitution of the State of New Jersey**

Because the Court would dismiss all claims supporting the Court's original, federal question jurisdiction, the Court would decline to exercise supplemental jurisdiction over Plaintiff's State law claims alleging violations of the Constitution of the State of New Jersey.

Section 1367 enables a federal court to consider claims premised upon state law over which no independent basis of federal jurisdiction exists. *See* 28 U.S.C. § 1367.  District courts have supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."  28 U.S.C. § 1367(a).  Section 1367(c) permits a district court to decline to exercise supplemental jurisdiction over a claim when "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  As discussed above, all of Plaintiff's federal claims would be dismissed.  This Court's original jurisdiction was premised on 28 U.S.C. §§ 1331, 1343.  No other basis for jurisdiction over Plaintiff's State law claims has been alleged or appears to exist.  Therefore, Plaintiff's remaining claims would be dismissed.  See 28 U.S.C. § 1367(c)(3); *Kohn v. AT&T Corp.*, 58 F. Supp. 2d 393, 421-22; *Eckhaus v. Consolidated Rail Corp.*, No. 00-5748 (WGB), 2003 WL 23205042, at * 16 (D.N.J. Dec. 24, 2003).

Consequently, Plaintiff's State law claims would not withstand a motion to dismiss.

**C.  The Motion to Amend Must Be Denied**

The Court has considered all of Plaintiff's other arguments, and finds them to be without merit.  Accordingly, because the amendment proposed by Plaintiff would be futile, Plaintiff's

motion for leave to amend his amended complaint is DENIED.

## V.  CONCLUSION

For the reasons discussed above, (1) Defendants' motion to dismiss is GRANTED and (2) Plaintiff's motion for leave to amend the amended complaint is DENIED.  Accordingly, this case is CLOSED.

Dated:  June 27, 2006

_____                         s/ Joel A. Pisano_____
                                                JOEL A. PISANO
                                                UNITED STATES DISTRICT JUDGE

Orig:   Clerk
cc:     Magistrate Judge Arleo; All Parties; File

24